**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF
AMERICA,

       Plaintiff,            CASE NO. 07-20414

 VS.                             DISTRICT JUDGE PAUL D. BORMAN

D-1 GEOFFREY FIEGER,       MAGISTRATE JUDGE MONA K. MAJZOUB
D-2 VERNON JOHNSON,
       Defendants.

                             /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO QUASH**
**SUBPOENA**
**AND**
**GRANTING GOVERNMENT'S MOTION FOR PROTECTIVE ORDER**

This criminal matter comes before the Court on two pre-trial motions. On January 4, 2008 Defendant Fieger filed his Motion to Quash Government Subpoena Served on Media Company. (Docket no. 132). The media company to which this subpoena is directed, Sussman Sikes, filed a Concurrence in Defendant Fieger's motion and asks that this Court quash this subpoena. (No. 07-50906, docket no. 12). In addition, on January 18, 2008 the Government filed a Motion for Protective Order to Preclude Extrajudicial Statements. (Docket no. 145). Each party has responded to the other party's motion.[1] The Court heard oral argument on both motions on February 11, 2008. Mr. Day argued for the Government, and Mr. Cranmer argued for Defendant Fieger. These matters

---

[1] Co-defendant Johnson has not filed a Response to the Government's Motion for Protective Order.

have been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A) by Judge Borman.² (Docket nos. 137, 151). The two motions are now ready for ruling.

*1. Motion to Quash Government Subpoena*

Both Defendant Fieger and the media company whose records were subpoened, Sussman Sikes, move to quash the Government's subpoena. (Docket no. 132; No. 07-50906, docket no. 12).

---

² Defendant Fieger contests this Court's "jurisdiction" under 28 U.S.C. § 636(b)(1)(A) to decide the Government's Motion for Protective Order. (Docket no. 163). Section 636(b)(1)(A) provides that "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief." Defendant Fieger argues that the Government's Motion for Protective Order asks the Court to issue an injunction against him and his counsel, and that this Court may only properly issue a recommended disposition of the Government's Motion under 28 U.S.C. § 636(b)(1)(B). Defendant Fieger relies upon the statutory language and *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 & n.3 (11th Cir. 2001). In that case, newspaper publishers brought an action under 42 U.S.C. § 1983 in federal court against a state court trial judge, seeking an injunction to prevent the state court judge from enforcing a gag order in a state tort suit against tobacco companies. The federal district court granted the media's preliminary injunction. Defendant Fieger relies upon page 1254 and footnote 3 of this opinion, contending that the Eleventh Circuit described the gag order as a form of injunctive relief. (Docket no. 163 at 1-2). However, a review of that page and that footnote reveals that when the court speaks of an injunction, it is referring to the injunction granted by the federal district judge and not the gag order issued by the state court trial judge. That case therefore fails to support the proposition that the Government's Motion for Protective Order is a "motion for injunctive relief" under section 636(b)(1)(A).

To the contrary, courts have distinguished a gag order from a traditional injunction although a gag order may have the practical effect of granting an injunction. *See United States v. Brown*, 218 F.3d 415, 422 n.7 (5th Cir. 2000) ("Whether or not the gag order has the practical effect of granting an injunction against making extrajudicial comments, '[a]n order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction'" on which an interlocutory appeal is allowed) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988)); *Affeldt v. Carr*, 628 F. Supp. 1097, 1101 (N.D. Ohio 1985) ("The issuance of orders disqualifying counsel and the issuance of gag orders are indeed pretrial matters which do not fall within the exception of 28 U.S.C. § 636(b)(1)(A). The Magistrate, therefore, had subject matter jurisdiction to issue such orders."). This Court therefore concludes that the Government's Motion for Protective Order is not a "motion for injunctive relief" under section 636(b)(1)(A). This Court will therefore issue an Order instead of a recommended disposition on the Motion, in compliance with Judge Borman's Order of Reference.

The Government notes in its Response that Defendant Fieger may lack standing to move to quash its subpoena, however it concedes that Sussman Sikes has standing and encourages this Court to address the matter on the merits. (Docket no. 146 at n.5). This Court will therefore address the Motion to Quash on its merits. *See United States v. Ail*, 2007 WL 1229415 at *5 (D. Or. Apr. 24, 2007) (noting that whether or not government has standing to move to quash Rule 17 subpoena to third parties, third parties have standing).

Defendant Fieger is an attorney. The Government indicted him and his law partner in August 2007 on charges related to their allegedly illegal presidential campaign contributions in 2003 and 2004. (Docket nos. 3, 133). On December 20, 2007 the United States Department of Justice issued a criminal subpoena pursuant to Fed. R. Crim. P. 17(c) commanding Sussman Sikes to produce documents relating to television commercials depicting President George W. Bush and Defendant Fieger. (Docket no. 132, ex. A). The face of the subpoena shows a check mark beside the box that states, "YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s)." Immediately below this command the subpoena reads, "Please produce the following records to Mr. Kendall Day at 211 West Fort Street, Suite 2001, Detroit, Michigan 48226." Below this request are listed two categories of documents. These are "broadcast reports or media schedules for any television commercials that feature" Defendant Fieger together with a video of the President. This information is to include the number of TV commercials, their content, the times they have played, when they are scheduled to be played, and on which TV stations. The second category listed is "the name and contact information of the person affiliated with Mr. Fieger who delivered the TV commercials to Sussman Sikes and who directs when and where the commercials should be played." The subpoena includes this criminal case number, and the name and address of Judge Borman's

3

courtroom, but omits a date and time for production. It is signed by Trial Attorney Day of the Department of Justice.

A cover letter accompanied this subpoena. (Docket no. 146, ex. A). It is from Mr. Day to counsel for Sussman Sikes, Mr. Sid Frank. The letter states that "there is no return date on the subpoena because we do not yet have a hearing date. Nevertheless, I appreciate your efforts to gather and produce the materials by January 14, 2008." (*Id*.). No documents have been produced due to the filing of the motions to quash.

Rule 17(c), Fed. R. Crim. P., authorizes the use of a subpoena to have documents produced. "The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them." Fed. R. Crim. P. 17(c)(1). "[T]he court may quash or modify the subpoena if compliance would be unreasonable or oppressive." (*Id*. R. 17(c)(2)).

The Supreme Court has stated that Rule 17(c) is not intended to provide a means of discovery for criminal cases. *United States v. Nixon*, 418 U.S. 683, 698 (1974). The Court identified a four-factor test that the moving party must satisfy in order to require production prior to trial. (*Id*. at 699-700). Rule 17 permits a subpoena to be issued "only for the purpose of compelling the attendance of witnesses or the production of evidence at a formal proceeding." *United States v. Keen*, 509 F.2d 1273, 1275 (6th Cir. 1975). In the *Keen* case, the court found "highly improper" the Government's use of subpoenas to compel witnesses to attend an interview miles from the place of trial and at a proceeding other than an authorized one. (*Id*. at 1274). Other courts agree that subpoenas are proper only if they are linked to a formal proceeding. *See United States v. LaFuente*, 991 F.2d 1406, 1411 (8th Cir. 1993) ("Several courts have interpreted Rule 17

to permit a subpoena to be issued only for the purpose of compelling the attendance of witnesses or the production of evidence at formal proceedings, such as grand jury proceedings, preliminary hearings, and trials.").

The Government states that it issued the subpoena to Sussman Sikes to "develop the factual record necessary to support the imposition of a protective order." (Docket no. 146 at 7). There was no return date for the subpoena, the government explains, because there was no hearing date with which to link the subpoena return. (*Id*.). The government also argues that the "subpoena directed that the records be produced to the Court" and asked that Sussman Sikes "please" produce them instead directly to the U.S. Attorney's Office. (*Id*. at 12 n.4). The government contends that it was proper, because it used the word "please," to ask the business to produce the records directly to the U.S. Attorney's Office. (*Id*).

Defendant Fieger and Sussman Sikes have shown that this subpoena is improper and should be quashed. The Government's use of the subpoena to gather facts to support its Motion for a Protective Order is the equivalent of using the motion as a discovery tool which is an improper purpose. *See Nixon*, 418 U.S. at 698. In addition, the wording of the subpoena contradicts the Government's position that the records were to be produced to the Court. Rather, the Government asked for the documents to be delivered to the U.S. Attorney's office. This method of production totally frustrates the fulfillment of the court's duty under *Nixon* to ensure that the records are subject to subpoena and, if they are, to ensure that they are fairly available to all parties. Finally, at the time the Government issued the subpoena it had not even filed its Motion for a Protective Order, the subject of the hearing for which the documents were sought. There was no formal hearing of any type scheduled, and none was possible on that motion, because there was no motion filed on which

to hold a hearing. This failure to link the subpoena to a formal proceeding is at odds with *Keen* and *LaFuente*. For all of these reasons, the Motion to Quash will be granted.

    2.    *Motion for Protective Order*

The Government moves for a protective order preventing all parties to this litigation from making extrajudicial statements about this case that a reasonable person would believe could be publicly disseminated. (Docket no. 145). It contends that Defendant Fieger is airing television commercials which convey the central theme of his selective prosecution claim, namely that he is being persecuted for his opposition to President Bush. (*Id.*). The Government also contends that Defendant Fieger is endangering the fair trial rights of Co-defendant Johnson and the Government by his statements in television commercials, press conferences, and numerous statements to print, radio and television media. (*Id.*). Defendant Fieger opposes the motion on the ground that such an Order would violate his First Amendment rights. (Docket no. 163).

The Government has submitted as exhibits to its Motion transcripts of three of Defendant Fieger's television commercials dating from December 2007 to January 2008. (Docket no. 145, exs. A-C). The Government has also submitted transcripts of two television news broadcasts (*id.* exs. E & F), transcripts of four radio broadcast interviews (*id.* exs. G-I, L), and several newspaper articles containing quotations attributed to Defendant Fieger. (*Id.* exs. J, K, N-P). Finally, the Government has submitted television station records showing information related to Defendant's television commercials, such as the frequency of their airings and the shows during which they aired. (*Id.* exs. D & Q).

Defendant Fieger does not challenge the Government's claims that he is responsible for these television advertisements or the accuracy of the submitted transcripts or broadcast records. (Docket

6

no. 163). He contends first that Judge Borman earlier declined to impose a "gag order" and that the Government's present motion is an untimely motion for reconsideration of that earlier denial. The record fails to substantiate this contention. Judge Borman raised the issue of the parties agreeing to the entry of an order prohibiting extrajudicial statements, but the parties did not do so. Defendant Fieger mischaracterizes these events when he states that Judge Borman declined to impose such an order when there was no formal motion or even a request from a party that he do so. Judge Borman entered a different protective order, with Defendant's consent, prohibiting Defendant Fieger and anyone on his behalf from releasing or authorizing the release of witness statements in this case or commenting on witness statements which a person reasonably would expect to be reported in the public media.[3] (Docket no. 116). That Order pertains only to witness statements and does not moot the broader issues currently posed to the Court.

Trial courts have the duty to minimize the potential for prejudicial pretrial publicity. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979). A co-defendant of a defendant who makes prejudicial extrajudicial comments is a beneficiary of this duty. *See United States v. Brown*, 218 F.3d at 424. In addition, the vigilance of the court against prejudicial pretrial publicity also protects the interest of the Government and the public in the fair administration of justice. *United States v. Koubriti*, 307 F. Supp. 2d 891, 897 (E.D. Mich. 2004). This Court's constitutional duty to protect the proceedings must be balanced with a defendant's right to free speech under the First Amendment, however. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n.18 (1984) ("[a]lthough litigants do not 'surrender their First Amendment rights at the courthouse door,' those rights may

---

[3] The Court had earlier entered a similar order as to Defendant Johnson. (Docket no. 110).

be subordinated to other interests that arise in this setting.") (citation omitted). In *Seattle Times*, the Court noted that on several occasions it had "approved restriction on the communications of trial participants where necessary to ensure a fair trial for a criminal defendant." (*Id*.). *See Gentile v. State Bar of Nevada*, 501 U.S.1030, 1072-73 (1991) (court may impose reasonable First Amendment restraints upon all parties to the litigation).

Defendant contends that the First Amendment protects his speech because it is "pure political speech" that does not concern his possible upcoming trial. (Docket no. 163 at 5). Defendant agrees that his speech may be prohibited to the extent that it presents a "substantial likelihood of materially prejudicing" a fair trial. (*Id*. at 6). This is the same standard advocated by the Government. (Docket no. 145 at 18). The Court finds that this is the proper standard to apply to determine whether the protective order should issue. *See Brown*, 218 F.3d at 428; *Koubriti,* 307 F. Supp. 2d at 899.

The question therefore is whether Defendant Fieger's television commercials and other extrajudicial statements, which have been and are still being seen by the public, present a substantial likelihood of materially prejudicing a fair trial in this matter. One of the most basic characteristics of a fair trial is that the outcome is determined by impartial jurors based on the evidence presented during the trial, rather than on out-of-court statements. *See Gentile*, 501 U.S. at 1075. During this discussion the Court will refer collectively to the statements made by Defendant Fieger in these various media outlets simply as his "speech."

Defendant's speech reaches listeners and readers in the Detroit metropolitan area from which one would reasonably expect the jurors in a trial to be selected. By way of example, the newspaper articles which report Defendant's speech are local to the Detroit metropolitan area. (Docket no. 145,

exs. J, K, N, O). The Court takes judicial notice that radio station WWJ-950 is a local Detroit station. In an interview on that station Defendant Fieger stated that the investigation of him was "clearly political" and "centers around [his] political activities as a Democrat." (*Id*. ex. G). Finally, the Court takes judicial notice that all three of the commercials related to Exhibits A, B, and C of the Government's Motion were available for viewing on the public website of Defendant Fieger's law firm (www.fiegerlaw.com) as of February 12, 2008, and that television stations WDIV and WJBK are local Detroit stations. The WDIV broadcast records submitted by the Government show that it has aired some of Defendant's commercials. (*Id*. ex. D). The records submitted by the Government show that Defendant Fieger's use of television commercials increased significantly on December 3, 2007 on this one station. (Docket no. 145, ex. D at 4 (showing number of spots increased from 13 in November 2007 to 117 in December 2007)). The likelihood is therefore great that potential jurors are being exposed to Defendant Fieger's speech.

Defendant's speech states or suggests that the charges brought by the Government against Defendants are solely due to political considerations and lack any basis in law or fact. (Docket no. 145, exs. J, K, N, O). In his interview by Greta Van Susteren on the FOX network in 2005 Defendant states that the investigation into his campaign contributions is politically motivated and that something is wrong if the "powers that be in Washington are targeting plaintiffs' attorneys." (*Id*. ex. E). Defendant has likened the investigation of him to "McCarthyism" and stated that it centers around his political activities as a Democrat. (*Id*. exs. F & G). In another interview Defendant states that the investigation is based upon the allegations of a former employee who was discharged from his law firm because of mental illness and is based on an insignificant amount of money. (*Id*. exs. H & I). In another interview Defendant says that the prosecutors in the Office of

9

Public Integrity of the Department of Justice are conducting political prosecutions such as this one. (*Id.* ex. L).

The content of Defendant Fieger's commercials are more subtle than his speech in these other media outlets. Nevertheless, they also present a substantial likelihood of materially prejudicing a fair trial in this matter. Government's exhibits A, B, and C all are linked to President Bush either by the excerpt from the President's speech or by his image. In exhibit B, Defendant Fieger speaks of being "singled out" because he "stands up" to the politicians who are trying to silence him. Given the content of his other speech connecting his claims of being politically persecuted and selectively prosecuted in this action to the Bush administration, these commercials create the danger that potential jurors will associate the content of these commercials to this criminal prosecution of Defendant Fieger. The commercials therefore are substantially likely to materially prejudice a fair trial even though this pending criminal action is not explicitly mentioned.

All of these comments and many more in the record are improper for at least two reasons. First, they pertain to Defendant Fieger's claim that he is being selectively prosecuted. The defense of selective prosecution is a matter for the court and not the jury. *United States v. Abboud*, 438 F.3d 554, 579-80 (6th Cir.), *cert. denied*, 127 S.Ct. 446 (2006). It is therefore improper for Defendant to claim that he is being selectively prosecuted to those who may be called to be jurors at his trial. Moreover, Defendant's speech creates the danger that the jurors in this matter will come to the courtroom with their view of the charges against Defendant prejudiced against the Government because of these statements. Second, his comments also create the danger that, for those who do not accept that his prosecution is unjust, jurors will come to the courtroom prejudiced against Defendant

10

Fieger's co-defendant.[4] The Court therefore finds that Defendant Fieger's statements create a substantial likelihood of materially prejudicing the parties' rights to a fair trial in this matter.

The Court also finds that alternative measures to granting a protective order will not sufficiently protect the parties' interests. Even extensive voir dire may not be able to filter out all of the effects of this pretrial publicity. *See Gentile*, 501 U.S. at 1075. In addition, because at least some of the publicity has been national in scope, a change of venue may not suffice to undo the effect of this speech. (*Id.*). Without a protective order, Defendant would also be free to publish similar prejudicial statements in the new venue. Even emphatic jury instructions may not effectively counter the effect of this speech due to the length of time jurors will have been exposed to it before trial. Sequestration of the jury will not erase the effects which are already accomplished. A limited protective order will prevent damage from being done as opposed to the often unsuccessful effort to repair damage that is already done. A protective order is the only remedial measure that will likely protect the parties' right to a fair trial in this matter.

Finally, the Court notes that a limited protective order will not prevent Defendant Fieger from advertising to promote his business. The protective order will target his speech that is prejudicial to a fair trial. Other speech is allowed.

During the February 11, 2008 hearing the Court gave the parties until February 14, 2008 to file any comments on the Government's proposed protective order which it had previously served on counsel. Defendant Fieger filed an objection to the Government's proposed order. (Docket no. 172). The Court has reviewed those objections. One objection is that Defendant Fieger wishes to

---

[4] The Court notes that Co-defendant Johnson has already raised the potential of prejudice to him resulting from Defendant Fieger's extrajudicial comments on the case. (Docket no. 55).

retain his ability to advertise and/or promote his law practice. The limited protective order which follows will allow him to do so. In addition, Defendant Fieger argues that the Government has failed to explain how the advertisements in question have anything to do with the instant case. The Court rejects that assertion. The Government's Motion is not based solely upon Defendant Fieger's commercials but also upon his other speech which undoubtedly is connected to this case. Furthermore, the Government has shown that there is a substantial likelihood that potential jurors will associate the content of Defendant's commercials with this action, in light of the totality of Defendant's speech.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Quash Government Subpoena (docket no. 132) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Government's Motion for Protective Order to Preclude Extrajudicial Statements (docket no. 145) is **GRANTED.**

**IT IS FURTHER ORDERED** that no lawyer or party to this proceeding shall make any extrajudicial statement about this case which a reasonable person would believe could be publicly disseminated. This Order shall not apply to the dissemination of information (bare facts as opposed to opinions, questions, or commentary) regarding scheduling matters or other information that is a part of the public record. However, this Order shall apply to any statement that relates in any way to Defendants' claim that they have been selected impermissibly for prosecution. Statements will be deemed to relate if they make any of the same factual claims seen in the parties' written pleadings or oral argument on this issue. If any party anticipates making an extrajudicial comment which might possibly be construed as relating to Defendants' claims of impermissible selection, then the Court encourages that party to obtain a prior ruling from the Court about whether or not the

comment will violate this Order. This Order applies to any person associated with the parties, including the parties' employees, agents, or representatives.

**NOTICE TO THE PARTIES**

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: February 19, 2008             s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Opinion and Order was served upon Counsel of Record on this date.

Dated: February 19, 2008             s/ Lisa C. Bartlett
                                     Courtroom Deputy