**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,                                 CASE NO. 07-CR-20414

-vs-                                               PAUL D. BORMAN
                                                      UNITED STATES DISTRICT JUDGE

D-1 GEOFFREY FIEGER,
D-2 VERNON JOHNSON,

        Defendants.
_____/

## ORDER ADOPTING IN PART AND MODIFYING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION IN FAVOR OF GRANTING THE GOVERNMENT'S MOTION FOR PROTECTIVE ORDER

Before the Court is Defendant Fieger's Objections to the February 19, 2008 Report and Recommendation ("Report") in favor of granting the Government's Motion for a Protective Order. (Dkt. No. 181 & 200).[1] On February 21, 2008, the Government responded to Defendant Fieger's Objections. (Dkt. No. 182). Oral argument on the issue was heard on February 25, 2008. The Court now reviews the Objections, the Report and Recommendation and pertinent parts of the record *de novo* pursuant to 28 U.S.C. § 636(b).

**I.    BACKGROUND**

On January 18, 2008, the Government filed a Motion for a Protective Order to Preclude Extrajudicial Statements by Defendant Fieger. (Dkt. No. 145). On January 24, 2008, this Court

---

       [1]       The Court notes that it construed Defendant Fieger's Emergency Motion to Stay the Magistrate Judge's Report as containing substantive arguments and objections to the Report. The Government filed a response to this Emergency Motion to Stay which also contained rebuttal argument as to Defendant Fieger's objections to the Report.

referred the Motion to Magistrate Judge Mona K. Majzoub.[2] (Dkt. No. 151). Defendant Fieger responded on February 4, 2008. (Dkt. No. 163).

The Government sought a protective order from the Court precluding any party or attorney in this action from making extrajudicial statements about the merits of the case. The Government argued that Defendant Fieger's extrajudicial statements, including commercials which were aired locally, *see* Gov't Exs. A, B, & C, and press conferences, had a substantial likelihood of materially prejudicing the potential jury pool and as a result potentially prejudicing Co-Defendant Johnson's and the Government's right to a fair trial.

Defendant Fieger contended that his commercials were business advertisements, (*see* Exs. A & B) or "pure" political speech in the form of a "public service announcement" (*see* Ex. C).

After oral argument, Magistrate Judge Majzoub recommended the Court grant the Government's Motion for a Protective Order to Preclude Extrajudicial Statements. Magistrate Judge Majzoub examined the submitted commercials (Exs. A-C) as well as the transcripts of two television news broadcasts (Gov't Br. Exs. E & F), four radio broadcasts (Gov't Br. Exs. G-I, & L, and newspaper articles which contained quotations attributed to Defendant Fieger (Gov't Br. Exs. J, K, N-P). Magistrate Judge Majzoub found, in light of the evidence submitted, that Defendant Fieger's commercials and other extrajudicial statements had the substantial likelihood of materially prejudicing the potential jury pool as such speech was specifically directed locally and created the danger of potential juror prejudice against the Government or against Co-Defendant Johnson.

---

[2] The Court also referred to Magistrate Judge Majzoub Defendant Fieger's Motion to Quash Government Subpoena served on Media Company which was disposed of in the same Report. (Dkt. No. 132). However, as there have been no objections filed on this issue, the Court has no reason to address this portion of Magistrate Judge Majzoub's Report and shall therefore, adopt this portion of the Report.

Magistrate Judge Majzoub also found that alternative measures, such as extensive voir dire, change in venue, jury instructions, or sequestration, would not sufficiently alleviate the potential for prejudice.

## II.     Objections

Defendant Fieger objects to Magistrate Judge Majzoub's Report contending that the proposed protective order is constitutionally infirm for the reasons that: (1) the protective order is overly broad, vague and not narrowly tailored; and (2) the Court cannot properly "silence" Defendant Fieger's political and business commercials.[3]

First, the Court notes that Defendant Fieger has failed to object to the Magistrate Judge's finding that his extrajudicial statements to the press should be prohibited as such comments present a "substantial likelihood of materially prejudicing" a fair trial. For this reason the Court shall adopt the Magistrate Judge's recommendation as to the prohibition of these extrajudicial statements.

### A.     Overly Broad, Vague and Not Narrowly Tailored

Defendant Fieger avers the Magistrate Judge's recommended Protective Order is overly broad, vague and not narrowly tailored such that the Protective Order cannot pass constitutional

---

[3] The Court recognizes that Defendant Fieger does not challenge Magistrate Judge Majzoub's findings regarding his other extrajudicial statements made to newpapers, radios, and in press conferences. (*See* Trans. 2/25/08, 7:11-18, Dezi) ("What's at issue here is really whether the order is narrowly tailored. We don't dispute your Honor's ability or right to control the proceedings, nor your right to preclude extrajudicial statements, that's very well settled law, we don't dispute that; however, what we do dispute is the Government's request to silence Mr. Fieger's political commercials, which have nothing to do with this case, and that's really what I would like to address.")

3

muster because the Protective Order restricts Defendant Fieger's ability to air his business commercials which contain political speech.[4]

Defendant Fieger argues that his right to protect his business and his right to free political speech are "inextricably intertwined" in this case. (Trans., 2/25/08, 10 at 5, Dezi). He contends that because his commercials do not expressly state that potential jurors should find him not guilty, those commercials are provided protection under the First Amendment and do not present a "substantial likelihood of materially prejudicing" the prospective jurors.

Therefore, the issue properly before the Court is whether (1) restricting Defendant Fieger's use of certain commercials, (Gov't Exs. A & B), violates his First Amendment right to free speech.[5]

As Magistrate Judge Majzoub accurately set forth, it is undisputed that the Supreme Court has held that a party's free speech may be prohibited to the extent that the speech presents a "substantial likelihood of materially prejudicing" a fair trial. *Gentile v. State Bar of Nevada*, 510

---

[4] The Court recognizes that on March 5, 2008, Defendant Fieger submitted a Notice of Intent to Cease and Desist Political Advertisement entitled "Never Again," (Ex. C). (Dkt. No. 201). In light of this Notice, the issue of whether exhibit C is protected speech is moot and shall not be addressed by the Court.

[5] The Court notes that the Government also submitted Ex. R as an example of a commercial in which Defendant Fieger does not include any message directed at the instant case nor attempt to influence the potential jury pool. As the Court agrees and finds Ex. R to be an example of a legitimate business advertisement and not subject to prohibition under *Gentile v. State Bar of Nevada*, 510 U.S. 1030, 1063 (1991), the Court shall not address it.

U.S. 1030, 1063 (1991).[6] This standard was judged to be constitutional by the Supreme Court which so eloquently observed:

> The "substantial likelihood" test . . . . is constitutional under this analysis, for it is designed to protect the integrity and fairness of a State's judicial system, and it imposes only narrow and necessary limitations on lawyers' speech. The limitations are aimed at two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found. Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by "impartial" jurors, and an outcome affected by extrajudicial statements would violate that fundamental right.

*Gentile*, 510 U.S. at 1075 (citations omitted).

In the present case, what is primarily at issue is commercial speech, where Defendant Fieger's business is financing commercials on behalf of the business, however, in reality the commercials relate to the instant prosecution. Defendant Fieger attempts to construe the commercials at issue as both legitimate business advertisement and political speech. The Court finds this explanation unpersuasive in regards to exhibits A and B.

1. **Commercials Exs. A & B**

The commercial entitled "Campaign" begins with a video clip of President George W. Bush at a rally at Lawrence Technological University stating, "Somebody was telling me that this Dr.

---

[6] Defendant Fieger attempts to characterize the Supreme Court as framing the issue in *Gentile* as directed at Nevada's ban "on political speech critical of the government and its officials" and further contends that the Supreme Court held that pure political speech criticizing the prosecution and government officials presented no likelihood of material prejudice. (Def. Br. at 3, citing *Gentile*, 501 U.S. at 1034, 1039). These arguments are misleading and unpersuasive for the reason Defendant Fieger relies upon sections authored by Justice Kennedy, which did not command a majority of Justices. Indeed, all of Defendant Fieger's citations to *Gentile* (save his citation to the standard that a state is free to prohibit attorney speech which has a substantial likelihood of material prejudice) are from Justice Kennedy's plurality opinion (only sections III and VI of that opinion commanded a majority of Justices).

5

Kevorkian's Lawyer is making noises."[7] (Ex. A). The commercial then shows a graphic entitled "the other side of the story" and an unidentified interview and Defendant Fieger have this exchange:

> Interviewer: Geoffrey, how does this <u>campaign against lawyers impact our freedom</u>?
>
> Fieger: Our constitution is built upon our right to defend ourselves. If they take away your lawyers who will protect you then?
>
> Interviewer: <u>Interesting that Bush didn't think that you had the right to campaign for the candidate you believed in.</u>
>
> Fieger: Yeah, but looking back does anybody think that he was the right choice?

(Ex. A) (emphasis added). This commercial ties directly in with the instant case where the Government is prosecuting Defendant Fieger for allegedly illegal campaign contributions to Senator John Edwards, the candidate Defendant Fieger "believed in."

The commercial entitled, "Pressure" begins with the same clip of President Bush at Lawrence Technological University referenced above. (Ex. B). The commercial then shows the same graphic entitled "the other side of the story" and the same unidentified interviewer and Defendant Fieger having this exchange:

> Interviewer: <u>Geoffrey, why do you think politicians are trying so hard to silence you</u>?
>
> Fieger: It's not just me. It's any lawyer who stands up. It's because we've got the training and the skills to fight back.
>
> Interviewer: How do you deal with the pressure?
>
> Fieger: It's stressful. And it hurts <u>when you're singled out</u>. I try to deal with it the same way everybody else does. Take time away with my wife and kids.

---

[7] The titles are used for ease of reference and can be found on Defendant Fieger's website, www.fiegerlaw.com (last visited 3/5/08).

(Ex. B) (emphasis added). This commercial also ties directly to the instant criminal prosecution where Defendant Fieger asserts in his claim of selective/vindictive prosecution that he has been singled out for prosecution by the "politicians" that allegedly lead the Department of Justice.

The Court finds these two commercials are unequivocally directed at polluting the potential jury venire in the instant case in favor of Defendant Fieger and against the Government. As Magistrate Judge Majzoub correctly found, the issue of selective prosecution is one of law not fact, and therefore, arguing such a theory to the potential jury pool through commercials, creates the danger of those jurors coming to the courthouse with prejudice against the Government.

Interestingly, "Campaign" does not contain the date of the rally at Lawrence Technological University, (year 2000), nor clarify that President Bush's comments were directed at Defendant Fieger's efforts in the 2000 presidential primary. (*See* Dkt. No. 78, Def. Supp. Br. at 2 & Ex. V, same clip of President Bush at LTU, 2/20/00). The Court finds that this commercial is not directed at a legitimate business interest but instead presents a substantial likelihood of material prejudice of the jury venire against the Government and to create sympathy for Defendant Fieger.

In "Pressure," Defendant Fieger is asked leading questions about him being "singled out" and the fact that politicians are trying to "silence him." These questions and Defendant Fieger's responses are obviously aimed at imparting the message to viewers that his current legal battles are due to the fact that politicians, i.e. the Bush Administration, have singled him out by prosecuting him.

That "Pressure" or "Campaign" fail to explicitly mention the instant case, or show Defendant Fieger with a sandwich board reading "I am not guilty," is not determinative of the present inquiry. The issue before the Court is whether these commercials are substantially likely to result in material

7

prejudice of the jury pool. Defendant Fieger argues that because the reference to the present case is "subtle" the commercials cannot be prohibited. This argument presumes that the American public is unlikely to understand subtlety and that such an approach incapable of substantially materially prejudicing the jury venire. This argument "doesn't hunt." Defendant Fieger uses innuendo and graphics as an attempt at a "subtle" message to the potential jury venire that he is being selectively prosecuted. Additionally, these televised commercials, are repeated day after day. This greatly increases the likelihood that the "subtle" message will "materially prejudice" the jury pool.[8]

For these reasons, the Court cannot find that exhibits A or B are "benign," but rather, these commercials are substantially likely to materially prejudice the jury against the Government and Co-Defendant Johnson and are prohibited. Therefore, Defendant Fieger's argument, with regard to

---

[8] In the commercial entitled, "Never Again" – now withdrawn by Defendant Fieger – photographs of President George W. Bush, Vice President Dick Cheney, Former White House Adviser, Karl Rove, and Former Attorney General, Alberto Gonzales were shown while the Defendant Fieger narrates:

> First they came for the communists, and I didn't speak up because I wasn't a communist.
> Then they came for the unionists. I didn't speak up, because I wasn't a unionist.
> Then they came for the Jews, the gypsies and the Catholics, but I didn't speak up, I was Protestant. When they came for the lawyers, your defenders, they were really coming after you. I'll always speak up for you. That's what lawyers do.
> Because in life, if you don't stand for something, you end up standing for nothing.

(Gov't Ex. C).

This commercial is also indicative of the message that Defendant Fieger seeks to convey with his other two commercials at issue. Indeed, Defendant Fieger uses a variation of a poem, entitled *First They Came for the Communists*, attributed to Pastor Martin Niemöller, and the pictures of President Bush, Vice President Cheney, Alberto Gonzales, and Karl Rove, to portray the idea that those four men came after Defendant Fieger and by so doing threaten all Americans. This concept is repeated, albeit with more subtlety in the "Pressure and "Campaign" commercials.

8

these commercials, that the Protective Order is overly broad, vague and not narrowly tailored because it restricts these commercials, is without merit.[9]

Additionally, the Court finds in restricting this speech the Court has not deprived Defendant Fieger of creating and airing commercials aimed at garnering business for his law firm. The Court has merely found that where the commercials impart a message, subtle or otherwise, that Defendant Fieger has been persecuted by the Government and selectively prosecuted, such speech is prohibited. (*See* Ex. R, example of legitimate business advertisement).

---

[9] Defendant Fieger also argues the ABA guidelines governing extrajudicial statements, provide that the following comments "generally fall outside the scope of a gag order": (1) the general nature of the charges against the accused; and (2) the general nature of the defense to the charges. (Def. Br. at 4); *see* ABA Standards for Criminal Justice, Fair Trial and Free Press, 3d Ed. 1992, St'd 8-1.1 (c)(1), (2), at 1-2 (the undersigned was a member of the committee).

Defendant Fieger contends that because his commercials "convey a subtle message regarding the impropriety of his Indictment," such comments are not prohibited under these standards. (*Id*. at 5). The Court finds this argument without merit for the reason that the messages contained in the commercials at issue cannot be construed as properly falling within statements referring to the "general nature of the defense." Indeed, as noted previously, the issue of selective prosecution is an issue for the court not for the jury. Further, the Court does not believe that these guidelines were created to govern commercials, wherein the message would be conveyed regularly and at specific times to the potential jury venire. Therefore, conveying this message can only serve to confuse and mislead a potential jury, and substantially increase the chance of jurors developing a pretrial prejudice towards the Government or conversely, Co-Defendant Johnson.

For this reason, the Court finds that although these guidelines evidence that innocuous comments relating to a party's general defense may fall outside the scope of a gag order, these special circumstances and the instant facts differentiate the present case from that of a "general" criminal case.

9

**B.      Fed. R. Civ. P. 65**

Defendant Fieger argues the Protective Order should be found vague because of its reference to arguments in other documents in violation of Fed. R. Civ. P. 65.

First, it is obvious the Federal Rules of Civil Procedure do not apply in a criminal proceeding, nor has Defendant Fieger set forth any law showing that any of this Court's brethren have relied upon such when issuing "Protective Orders" in criminal proceedings. Therefore, Defendant Fieger's argument is facially incorrect.

However, the Court finds that the Protective Order set forth in the Report and Recommendation is vague in its scope due to the fact that it relies by reference to other documents and is overly sweeping in some of its terminology. For this reason the Court issues, below, a more specific and narrow Protective Order.

**III.     CONCLUSION**

The portion of the Supreme Court majority opinion in *Gentile*, authored by Chief Justice Rehnquist, contains the following relevant passages:

> [T]he theory upon which our criminal justice system is founded: The outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court of proceeding. Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial and *ex parte* statements by counsel giving their version of the facts obviously threaten to undermine this basic tenet.
>
> . . . .
>
> Even outside the courtroom, a majority of the Court in two separate opinions in the case of *In re Sawyer*, 360 U.S. 622 (1959), observed that lawyers in pending cases were subject to ethical restrictions on speech to which an ordinary citizen would not be.
>
> . . . .

> Lawyers representing clients in pending cases are key participants in the criminal justice system, and the State may demand some adherence to the precepts of that system in regulating their speech as well as their conduct.
>
> . . . .
>
> The limitations are aimed at two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found.

501 U.S. at 1070-75.

For these reasons, the Court:

(1) **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation such that it **GRANTS** Defendant Fieger's Motion to Quash Government Subpoena Served on Media Company (Dkt. No. 132):

> The Government's use of the subpoena to gather facts to support its Motion for a Protective Order is the equivalent of using the motion as a discovery tool which is an improper purpose. In addition, the wording of the subpoena contradicts the Government's position that the records were to be produced by the Court. Rather, the Government asked for the documents to be delivered to the U.S. Attorneys office. This method of production totally frustrates the fulfillment of the court's duty under *Nixon* to ensure that the records are subject to subpoena, and if they are, to ensure that they are fairly available to all parties. Finally, at the time the Government issued the subpoena it had not even filed its Motion for a Protective Order, the subject of the hearing for which the documents were sought. There was no formal hearing of any type scheduled, and none was possible on that motion, because there was no motion filed on which to hold a hearing. This failure to link the subpoena to a formal proceeding is at odds with *Keen* and *LaFuente*. For all these reasons the, Motion to Quash will be granted.

(Report, 5-6) (internal citation omitted);

(2) **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation, specifically the constitutional analysis and the conclusion regarding extrajudicial statements in press conferences, print and radio interviews to which <u>Defendant Fieger raised no objections</u>:

11

> Trial courts have the duty to minimize the potential for prejudicial pretrial publicity. A co-defendant who makes prejudicial extrajudicial comments is a beneficiary of this duty. In addition, the vigilance of the court against prejudicial pretrial publicity also protects the interest of the Government and the public in the fair administration of justice. This Court's constitutional duty to protect the proceedings must be balanced with a defendant's right to free speech under the First Amendment, however. In *Seattle Times*, the Court noted that on several occasions it had "approved restriction on the communications of trial participants where necessary to ensure a fair trial for a criminal defendant."
>
> . . . .
>
> All of these [extrajudicial] comments and many more in the record are improper for at least two reasons. First, they pertain to Defendant Fieger's claim that he is being selectively prosecuted. The defense of selective prosecution is a matter for the court and not the jury. It is therefore improper for Defendant to claim that he is being selectively prosecuted to those who may be called to be jurors at his trial. Moreover, Defendant's speech creates the danger that the jurors in this matter will come to the courtroom with their view of the charges against Defendant prejudiced against the Government because of these statements. Second, this comments also create the danger, that for those who do not accept that his prosecution is unjust, jurors will come to the court room prejudiced against Defendant Fieger's co-defendant. The Court therefore finds that Defendant Fieger's [extrajudicial] statements create a substantial likelihood of materially prejudicing the parties's rights to a fair trial in this matter.

(Report, 7-8, 10-11) (internal citations omitted);

(3)  **GRANTS** the Government's Motion for Protective Order to Exclude Extrajudicial Statements (Dkt. No. 145);

(3)  **MODIFIES** the Magistrate Judge's Report and Recommendation such that it sets forth a Protective Order; and issues the following Protective Order:

(4)  **ORDERS**: that no lawyer or party to this proceeding, Government and Defendants, shall make any extrajudicial statement about this case which a reasonable person would believe could be publically disseminated. This Order shall not apply to the dissemination of information (bare facts as opposed to opinions, questions, or

commentary) regarding scheduling matters or other information that is a part of the public record. However, this Order shall apply to any statement, including advertisements, or website maintained by the parties, that imparts the message that Defendants have been subject to an improper, selective or vindictive prosecution.

**SO ORDERED**.


                                                  s/Paul D. Borman
                                                  PAUL D. BORMAN
                                                  UNITED STATES DISTRICT JUDGE


Dated: March 11, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 11, 2008.


                                                s/Denise Goodine
                                                Case Manager