**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA.,

    Plaintiff,         CASE NO. 07-CR-20414

-vs-               PAUL D. BORMAN
                 UNITED STATES DISTRICT JUDGE

D-1 GEOFFREY FIEGER,
D-2 VERNON JOHNSON,

    Defendants.
_____/

**OPINION AND ORDER: (1) GRANTING IN PART AND DENYING IN PART THE
GOVERNMENT'S MOTION IN LIMINE AND SECOND MOTION IN LIMINE; AND
(2) DENYING DEFENDANTS' MOTION IN LIMINE**

  Before this Court are Co-Defendants Geoffrey Fieger and Vernon Johnson's, and the Government's three Motions in Limine.[1] (Dkt. Nos. 120, 195 & 196). A hearing on these Motions was held on March 17, 2008. For the following reasons, the Court grants in part and denies in part the Government's Motion in Limine and Second Motion in Limine, and denies Defendants' Motion in Limine.

**I. LEGAL STANDARDS**

  The Court exercises discretion when resolving questions of relevancy and admissibility of evidence at trial. *See United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1992). Generally, evidentiary determinations depend largely upon the Court's assessment of the relevance of proffered evidence as well as the extent that any prejudice is created by its admission. Relevant evidence is defined in Federal Rule of Evidence 401, as "evidence having any tendency to make the existence

---

[1] Defendant Johnson filed a joinder and concurrence in Defendant Fieger's Motion in Limine. (Dkt. No. 199).

of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Pursuant to Federal Rule of Evidence 403, a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

I. ANALYSIS

   A. Government's Motion in Limine to preclude evidence or argument concerning improper prosecution

The Government requests that Defendants be precluded from asking questions, submitting evidence or arguing at trial eight enumerated areas of inquiry which it argues relate to Defendants' claim of selective and vindictive prosecution. It is well settled by the Sixth Circuit that "the defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury." *United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006). The Sixth Circuit explained:

> By both tradition and constitutional mandate the jury is given the responsibility of determining guilt or innocence according to instructions of law delivered by the court. The question of discriminatory prosecution relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution.

*Id.* (quoting *United States v. Berrigan*, 482 F.2d 171, 175 (3d Cir. 1973)). Similarly, the Sixth Circuit has recently recognized that a claim of vindictive prosecution is also independent of a defendant's guilt or innocence and should not be set before a jury. *See United States v. Simpson*, 226 Fed. Appx. 556, 562 (6th Cir. May 8, 2007) (unpublished).

2

Defendant Johnson does not dispute this precedent. Defendant Fieger, on the other hand, attempts to differentiate *Abboud* and the instant case on the ground that the present case involves politics and the charge of obstruction of justice.[2]

After review, the Court finds that Defendant Fieger's attempt to differentiate *Abboud* from the instant case fails. The Court is bound by clear precedent. Therefore, Defendants are precluded from presenting any argument or evidence that Defendants were the subjects of a selective or vindictive prosecution.

The question then becomes how narrow is this preclusion, and whether the Government's Motion in Limine seeks the preclusion of any independently relevant (and therefore proper) evidence or argument.

The Court finds that inquiry into the amount of monetary resources or time that the Government expended in this matter is irrelevant to any proper defense by Defendants. The Government's expenditure of monetary resources or the time invested in this prosecution has no connection to guilt or innocence. Therefore, inquiry or argument on this issue is precluded at trial.

Defendants are, however, permitted to bring in the factual scenario of the Government's search warrant execution/home interview night.

The Court also finds that argument or evidence that in other cases campaign finance violations were resolved civil penalties by a separate and distinct federal Government entity, the Federal Election Commission ("FEC"), is not relevant to the instant case. Whether Defendants were or were not investigated by the FEC for the charged campaign finance violations does not lend

---

[2] The Court recognizes that a Missouri district court recently applied *Abboud* to grant a similar motion in limine in a politically charged case. *See United States v. Cardarella*, 2007 U.S. Dist. LEXIS 64370 (W.D. Mo., Aug. 30, 2007) (unpublished).

3

support to any proper defense. Allowing this issue into evidence would only serve to improperly confuse the jury.

Defendant Fieger argues that to "rebut the government's evidence as to whether he 'knowingly and willfully' violated the law, he is entitled to argue/introduce evidence that the conduct he engaged in rarely results in criminal charges, and that the DOJ improperly fired nine United States Attorneys who refused to bring prosecutions like this one." (Def. Br. 13). This legal argument is without merit. While it is true Defendant Fieger is entitled to attempt to show that he did not knowingly or willfully violate the law (as it is pertinent for Counts II-V and the object of Count I, see discussion, *infra*), this does allow Defendant Fieger to argue a selective/vindictive prosecution claim. How often a law is enforced is not relevant to Defendant Fieger's willful or knowing conduct, nor can it constitute any valid defense at trial.

Defendant Fieger argues that he should be allowed to present evidence, testimony and argument as to his belief that the investigation was illegitimate, and therefore, he did not "act corruptly" in attempting to impede it as charged in Count X. The Court finds this argument without merit. Defendant Fieger is not permitted to argue at trial that this grand jury investigation was "illegitimate," and therefore he was justified in impeding it. As a result, the Court grants the Government's Motion in Limine in this respect.

The Government also seeks to prohibit Defendants from claiming the Government violated any law, or Justice Department prosecution practices during its investigation of Defendants. The Government also seeks to prohibit Defendants from arguing that the Government intimidated or harassed witnesses, or used improper subpoenas. The Court grants the Government's request to the extent the Government seeks to exclude testimony, argument or evidence as to any claim of

4

improper subpoenas, or claim that the Government violated approved prosecution practices during the investigation. These arguments were dealt with and rejected in the prior Motion to Dismiss based on Selective or Vindictive Prosecution.

The Court, however, denies the Government's request as to prohibiting Defendants from presenting testimony, evidence or argument that the Government's agents intimidated or harassed witnesses. Both Defendants argue that they are allowed to show the alleged bias and motivation of Government agents through cross-examination and through the testimony of lay witnesses. In *Abboud*, the Sixth Circuit spoke directly to this issue:

> We wholeheartedly agree with Defendants' argument that cross-examination plays a vital role in the adversarial system of our country, and the ability to show bias, motive, or prejudice on the part of a witness is an integral part of cross-examination. Defendants, however, seem to conflate the concepts of witness bias and selective prosecution. Witness bias speaks to "the reliability of the witness." When one exposes bias, motive, or prejudice of a witness, one is calling into question the credibility of that witness' testimony. Selective prosecution is a separate and distinct claim that the defendant has been unconstitutionally selected for prosecution.

*Id*. at 580 (internal citation omitted). To the extent that Defendants wish to show that the government witnesses had a motive or bias which speaks to the "reliability" of their testimony that questioning shall be allowed. This includes asking witnesses about the circumstances surrounding their questioning by Government agents, and therefore also necessarily includes the Government's ability to rebut this testimony by cross-examination and testimony of Government agents.

The Government also seeks to prohibit Defendants from: (1) questioning government agents or others regarding their political affiliations insofar as it relates to their decision to investigate Defendants; (2) asking questions or presenting evidence as to any tie between this investigation and that of the state investigation of the state election campaign to reelect Michigan Supreme Court Justice Stephen Markman; (3) presenting evidence or testimony as to the appointment, removal, or

5

promotion of any U.S. Attorney in the Eastern District of Michigan or elsewhere; and (4) asking questions or presenting evidence regarding possible coordination of this investigation with the Michigan State Attorney General's office. The Court grants this request as such lines of questioning are prohibited under *Abboud*.

Therefore, the Court grants in part and denies in part the Government's Motion in Limine.

## B. Government's Second Motion in Limine

The Government requests in its Second Motion in Limine that the Court limit evidence or argument concerning applicable laws or other matters, and to preclude evidence and argument concerning jury nullification.

### 1. Preclusion of evidence or argument regarding applicable law

The Government argues that Defendants should be precluded from arguing or presenting evidence as to the meaning of the law, and also be precluded from arguing that a law itself is unconstitutional.

The Government concedes that under §§ 441b and 441f, the law requires Defendants to have "knowingly and willingly" violated the law, therefore, Defendants are allowed to argue and present evidence and testimony that at the time that of the scheme, Defendants had a mistaken good-faith belief that reimbursement did not violate the law contained in §§ 441f or 441b. However, the Government argues that Defendants should not be allowed to argue about whether reimbursing the contributions of others violates §§ 441f or 441b as that goes to the definition of the law which the Court instructs the jury.

The Court agrees with the Government that whether reimbursement actually violates §§ 441f or 441b is not a proper argument for Defendants, as the Court will instruct the jury as to the law.

6

Moreover, the Court finds that Defendants are precluded from arguing whether the law under which Defendants are charged is constitutional. These arguments have been addressed in Defendants' Motion to Dismiss the Indictment (*see* Dkt. No. 60), and subsequently rejected by the Court in its Opinion and Order. (*See* Dkt. No. 109). However, it is proper for Defendants to argue and present evidence regarding Defendants' good-faith belief that their actions did not violate §§ 441f or 441b (contained in Counts II-V, and the object of the conspiracy contained in Count I).

The Government's contention that Defendants should be precluded from arguing or presenting evidence as to the meaning or scope of the law, rests upon the contention that Counts II-V, and the object of the conspiracy charge, Count I, all require the Government to show that Defendants knowingly and willingly violated the law, while Counts VI- IX, causing false statements, do not require the Government carry this burden.

The Court now addresses the question of whether Counts VI-IX, causing a false statement, pursuant to 18 U.S.C. §§ 2, 1001, require the Government to show that Defendants violated a "known legal duty," which in turn, allow Defendants to properly present evidence regarding their good-faith belief as to the law, as well as require a jury instruction as to this burden.

Defendants aver that the Government is required to prove that Defendants violated a "known legal duty" for Counts VI-IX in addition to Counts I-IV. Defendants rely upon *United States v. Curran*, 20 F.3d 560 (3d Cir. 1994), which held that charges brought pursuant to 18 U.S.C. §§ 2, 1001, in the campaign finance law context, require the Government to show that Defendants knew the requirements of the law and violated it regardless. Defendant Fieger contends, therefore, that because the Government has this burden, Defendants must be allowed to present evidence as to

7

Defendants' good-faith, subjective belief as to the law and whether their actions violated that law. (Def. Br. at 2).

In *Curran*, the Third Circuit granted a new trial to a defendant convicted of charges of causing election campaign treasurers to submit false reports to the Federal Election Commission, where the jury instruction "erroneously defined the defendant's duty to the Commission and failed to adequately explain the intent requirement under 18 U.S.C. §§ 2 and 1001." 20 F.3d at 562. Defendant Curran was accused of reimbursing employees in cash for donations to the election campaigns of certain candidates for federal political offices. *Id*. As in the present case, where the false statements at issue were submitted and prepared by campaign treasurers and not defendants, the conduct does not "fall directly within the scope of § 1001." *Id*. Rather, § 2, is used to "bridge the gap," and used in tandem with § 1001 to charge defendant with causing campaign treasurers to file false reports. *Id*.

In *Curran*, the Court explained:

> Section 2(b) imposes criminal liability on those who possess the *mens rea* to commit an offense and cause others to violate a criminal statute. Under § 2(b), the intermediary committing the *actus reus*, the physical aspect of a crime, may be blameless and, therefore is not the person whom society seeks to punish.

*Id*. (internal citations omitted). Therefore, the Court held that where a defendant is charged under both §§ 2 and 1001, the Government must show "a defendant had the requisite intent under § 1001 (deliberate action with knowledge that the statements were not true), but also prove that the defendant 'willfully' caused the false representations to be made." *Id*. at 567-68.

The Third Circuit extended the Supreme Court's decision in *Ratzlaf v. United States*, 510 U.S. 135 (1994), to ultimately hold that the Government must show a defendant "knew of reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was

8

unlawful," when charged with both §§ 2 and 1001. *Curran*, 20 F.3d at 569; *see Ratzlaf*, 510 U.S. at 136 (holding that in order to establish that an accused "willfully" violated 31 U.S.C. § 5322, the Government must show the accused "acted with knowledge that his conduct was unlawful.").

Defendants argue that in light of the holding in *Curran*, this Court must hold that the Government has the burden to show that Defendants knowingly and willingly violated the law to succeed in Counts VI-IX in addition to Counts I-IV. The Court, after review, and in the absence of any direction from the Sixth Circuit on this issue, rejects *Curran*, and adopts the approach advanced by the Second and D.C. Circuit Courts in *United States v. Gabriel*, 125 F.3d 89 (2d Cir. 1997) and *United States v. Hsia*, 176 F.3d 517 (D.C. Cir. 1999).

In both *Hsia* and *Gabriel*, the courts rejected the Third Circuit's extension of the *Ratzlaf* "willful" standard to those cases in which a defendant is charged under §§ 2 and 1001. In *Gabriel*, the Second Circuit explained that the reasoning in *Curran* was flawed because the Third Circuit:

> focused its attention almost exclusively on the federal election laws and explicitly limited its decision to "cases brought under sections 2(b) and 1001 in the federal election law context" – indicating that in other contexts, the court might interpret section 2(b)'s "willfully" requirement differently.

125 F.3d at 101 (internal citations omitted). The Second Circuit noted that this approach, would create a situation in which:

> whether section 2(b) required a knowing violation of the law would turn on the context in which the statement was made. Moreover, if a defendant was prosecuted under section 2(b) and a criminal section other than section 1001, whether section 2(b) required a knowing violation of the law would turn not only on the nature of the other section but also on the context of the alleged violation of that section . . . .

*Id*.

Ultimately, the Second Circuit declined to depart from the "general rule in criminal cases [] that the government need not prove a knowing violation of the law," and held that the "most

9

natural interpretation of section 2(b) is that a defendant with a mental state necessary to violate the underlying section is guilty of violation of that section if he intentionally cases another to commit the requisite act." *Id.*

In *Hsia*, the defendant was indicted on various charges relating to a scheme to solicit illegal political contributions and then disguise them as legal contributions, involving charges based on 18 U.S.C. §§ 2(b), 1001. 176 F.3d at 520. The Court ultimately held that *Curran* "extends *Ratzlaf* too far: that case did not universalize a broad reading of 'willfully' and thus overturn the general rule that ignorance of the law is no excuse." *Id.* at 522. As in *Gabriel*, the Court held that under a "natural" reading of §§ 2(b) and 1001, "the government may show *mens rea* simply by proof (1) that the defendant knew that the statements to be made were false (the mens rea for the underlying offense – § 1001) and (2) that the defendant intentionally caused such statements to be made by another (the additional *mens rea* for § 2(b))." *Id.*

Moreover, although the Sixth Circuit has not spoken on this issue, the Court finds the Sixth Circuit Pattern Jury Instructions persuasive. Section 4.01A addresses the definition of the word "willfully" in § 2(b):

> [T]here is no case law in the Sixth Circuit to guide the committee further on defining this *mens rea* in the context of 2(b). The Committee recommends that the term "willfully" be defined by reference to the particular underlying act involved in the case.

6th Cir. Pat. Jury Ins. 4.01A (2005). Further, Defendants do not dispute that 18 U.S.C. § 1001 requires that "to convict a person accused of making a false statement, the government must prove not only that the statement was false, but that the accused knew it to be false. Thus, the Government is required to show that the misrepresentation was not made innocently or inadvertently." *United States v. Brown*, 151 F.3d 476, 486 (6th Cir. 2005) (quoting *Curran*, 20 F.3d at 563)).

10

Therefore, the Court finds *Gabriel* and *Hsia* are persuasive on this issue, and the Court adopts the reasoning of the Second and D.C. Circuit Courts of Appeal and holds that the Government does not have the burden of showing that Defendants knowingly violated a legal duty for the crimes charged in Counts VI-IX pursuant to §§ 2(b) and 1001.

The Court notes that Defendant Fieger argues that Count X, Obstruction of Justice, 18 U.S.C. § 1503, also requires the Government to show that Defendant Fieger acted "willfully" and therefore testimony about whether he had a sincerely held belief as to whether the investigation was legitimate, is relevant and admissible. The Court rejects this argument. To the extent Defendant Fieger argues that evidence or testimony as to his "belief" in the legitimacy of the Government's investigation is relevant, he has failed to set forth any supporting authority. Defendant Fieger appears to contend that evidence of his belief of a selective or vindictive prosecution or investigation is relevant to these proceedings. It is not.

### 2. Witnesses' Statements Regarding Belief that Conduct was Lawful

The Government contends that a witness' personal belief as to whether his conduct was in violation of the law is only relevant if a foundation can be laid that "the witness discussed the law with defendants before or contemporaneously with the making of the straw contributions." (Gov't Br. at 8). Defendants agree that the information would be relevant in this instance and further argue that witnesses' personal belief as to whether their conduct violated the law is relevant and should be allowed before the jury.

After review, the Court finds that this issue can be more effectively and appropriately determined at trial on a witness-by-witness basis. This will allow the Court to weigh the individual

11

facts as circumstances arise. Note, this discussion relates to statements by witnesses, not statements by Defendants.

### 3. Jury Nullification

The Court grants the unopposed portion of the Government's Motion in Limine to the extent it seeks to prohibit Defendants from making an argument for jury nullification; specifically Defendants are precluded from suggesting to the jury: (1) that it should acquit on the basis of Defendant Fieger's notoriety or (2) it should acquit based upon an improper, selective or vindictive prosecution. To the extent the Government wishes the Court to issue an unprecedented broad and sweeping prohibition against the mention of all things which are not elements of the offense, the Court declines to do so.

### 4. Impeachment

The Government also seeks to preclude Defendants from asking questions which are not probative of truthfulness, specifically questions posed to witnesses which involve sickness, physical and/or mental, or embarrassing allegations, unless the prior approval of the Court is obtained. The Court finds that the parties are bound, in the same fashion as the Court, to the Federal Rules of Evidence. The Court presumes that counsel will recognize the bounds of propriety. Where a party attempts to question a witness as to irrelevant issues which are not probative to a witness' veracity and the reliability of their testimony, the Court will rely upon the Government or Defendants to object and shall make its decision at that time.

The Court also points Counsel to this Court's Civility Principles which include treating witnesses "in a civil and courteous manner", refraining from abusive or offensive conduct directed

toward witnesses, and "abstain[ing] from disparaging personal remarks or acrimony". The Civility Principles will be alive and well in this courtroom.

### 5. Non-Testifying Witnesses

Finally, the Government asks the Court to preclude Defendants from making speculations as to what non-testifying witnesses might have said to the jurors. The Court grants this request. It is well settled law that only when a witness is "peculiarly" within the opposing parties power to produce may an adverse interest be inferred. *See United States v. Blakemore*, 489 F.2d 193, 196 (6th Cir. 1973). No such situation is known to exist here.

### C. Defendants' Motion in Limine

Defendants argue the Court should preclude the prosecution from using the word "conduit" and the phrase "source of funds." Defendants also seek to preclude the prosecution from using the words "straw donor," "launder," "funnel," or "bundling."[3] Defendants also request they be allowed to discuss the consequences and punishment of the charged crimes as evidence tending to show that Defendants would not willfully or knowingly violate these laws. And finally, Defendants seek for the Court to prohibit any reference to witness Eric Humphrey's fear of retaliation from Defendant Fieger.

The Court finds that Defendants' requests for limiting the use of certain language – conduit, source of funds, straw donor, funnel, bundling – is without basis. There is no reason to believe that the jury will be confused or misled by the use of this language. Further, the Court finds Defendants' arguments as to why this language should be prohibited are duplicative of the arguments presented

---

[3] The Government stipulates that it will not use the word "launder" without first seeking leave of the Court.

in Defendants' Motion to Dismiss the Indictment and which the Court rejected by Opinion and Order. (*See* Dkt. No. 109).

As to the Defendants' use of the word "political" in this trial, the Court notes that the superseding indictment uses the term "political" five times in describing committees and contribution in this case. Thus, the word "political" is an appropriate term for use at this trial, but not the phrase "politically motivated prosecution."

Defendants request that the Court allow them to discuss the possible consequences and punishment for the charged offenses. This request is without legal support and the Court denies it.

Finally, Defendants seeks to prohibit any reference to Mr. Humphrey's fear of retaliation or reprisal from Defendant Fieger. This is certainly not relevant to the Government's direct examination of Mr. Humphrey. This subject matter could become relevant as to Mr. Humphrey's state of mind depending on the Defendant's cross-examination. However, the Government must seek the Court's permission prior to introducing such testimony on rebuttal.

## IV. CONCLUSION

For these reasons, the Court:

(1) **GRANTS IN PART AND DENIES IN PART** the Government's Motion in Limine and Second Motion in Limine (Dkt. Nos. 120 & 195); and

(2) **DENIES** Defendants' Motion in Limine (Dkt. No. 196).

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN

UNITED STATES DISTRICT JUDGE

Dated: April 8, 2008

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 8, 2008.

                                                          s/Denise Goodine
                                                          Case Manager